UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| EVELYN NELSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 14-10254-JGD |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF DECISION AND
## ORDER ON CROSS-MOTIONS REGARDING
## DENIAL OF SOCIAL SECURITY BENEFITS

March 25, 2014

DEIN, U.S.M.J.

## I. INTRODUCTION

The plaintiff/claimant, Evelyn Nelson ("Nelson"), has brought this action pursuant to sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), in order to challenge the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for Supplemental Security Income ("SSI") benefits. The matter is presently before the court on the plaintiff's "Motion to Reverse" (Docket No. 19), by which the plaintiff is seeking an order vacating the Commissioner's decision and remanding the matter to the Social Security Administration for further administrative proceedings. It is also before the court on the "Defendant's Motion to Affirm the Commissioner's Decision" (Docket No. 29),

by which the Commissioner is seeking an order affirming her decision to deny Nelson's claims for benefits. At issue is whether the decision of the Administrative Law Judge ("ALJ") that Nelson was not disabled was supported by substantial evidence. In particular, Nelson contends that the ALJ erred in rejecting the opinion of Nelson's treating physician and a state examining physician, as well as the disability assessments completed in connection with Nelson's application for state benefits, without adequate explanation. In addition, the ALJ allegedly erred in relying on the opinion of non-examining physicians who did not have the plaintiff's entire medical record. Finally, the plaintiff contends that the ALJ's functional capacity analysis was flawed due to an incomplete hypothetical question propounded to the vocational expert.[1]

For all the reasons described below, this court finds that the ALJ acted appropriately and that his decision was supported by substantial evidence in the record. Accordingly, the plaintiff's Motion to Reverse is DENIED, and the Commissioner's Motion to Affirm is ALLOWED.

---

[1] The plaintiff also challenged the decision of the Appeals Council in declining Nelson's request for review without addressing the fact that she was about to turn 55, which would have put her in a different category and would have altered the applicable Guideline analysis. However, the plaintiff, appropriately, waived this claim at oral argument. See Barrett v. Apfel, 40 F. Supp. 2d 31, 38 (D. Mass. 1999) (the date of the ALJ's decision, not the Appeals Council's review, controls when assessing age-dependent factors).

## II.  STATEMENT OF FACTS[2]

### The Claimant

Nelson was born in 1959, and she was 52 years old when she applied for SSI benefits on February 25, 2011.  (Tr. 8, 81).  She alleged that she was disabled primarily due to osteoarthritis, right hip pain, lower back pain, knee pain, diabetes, and hypertension.  (See, e.g., Tr. 10-12, 29, 294).  Nelson is a high school graduate and has taken a few classes at a community college.  (Tr. 30-31).  Her previous jobs included working as a cashier/bagger, house cleaner, day laborer, food server, mail sorter, packager and usher.  (Tr. 226).  Nelson had left her last job as a food server in 2011 due to difficulties getting to work and performing her job.  (Tr. 34-35).

At the time of her hearing before the ALJ, Nelson was living with her boyfriend. (Tr. 31).  Nelson testified that she could slowly dress herself, bathe and prepare meals, but she had difficulty opening bottles and grabbing and gripping things in general.  (Tr. 31-32, 39).  She could lift a gallon of milk, but only with two hands.  (Tr. 34).  According to Nelson, she did not have any difficulty with sweeping, vacuuming, cooking meals, or washing dishes, although it took her "a year and a day to finish" such tasks.  (Tr. 47). Nelson filled her days watching TV and taking a walk to the nearby mall.  (Tr. 33).  Even though the mall was only a block away, it took her 30 minutes to get there, which she accomplished without stopping.  (Tr. 44).  Nelson testified that she walked slowly, and

---

[2]  The Commissioner has filed the record below, which will be cited as "Tr. ___."  The ALJ's decision can be found beginning at Tr. 8.

used a cane to steady herself when she went outside, although the cane was not prescribed for her by any doctor. (Tr. 42-44).

Nelson testified that she tired easily and had difficulty sitting for long periods of time without changing positions. (Tr. 45-46). At home she would get up about every hour or 45 minutes, or her hip would "get[ ] stuck." (Tr. 46). She could not estimate how long she could stand in one place, though she walked to the mall, went to the checkout lane to buy something, and then walked home, without having to sit down. (Tr. 45).

According to Nelson, her right hip and leg issues had started in 2011, around the time she stopped working. (Tr. 39). She testified that over-the-counter medicine every two to four hours made the pain "not that bad," which she equated with a four or five on a scale of one to ten. (Tr. 40-41). She further testified that she had tried physical therapy, but it did not work. (Tr. 43).

With respect to her diabetes, Nelson testified that her blood sugar level kept fluctuating. (Tr. 37). The doctors suggested that this was caused by the fact that she was drinking too much. (Tr. 37). She testified that she did not drink every day, only every weekend. (Tr. 38). She drank "a lot on the weekends," including hard liquor and beer. (Tr. 49). Nelson testified that she had some tingling and numbness in her hands and feet, and that the doctor had told her that she needed to increase her insulin. (Tr. 38). Nelson contends that her physical impairments prevented her from returning to work or from carrying out any alternative type of gainful employment.

## Procedural History

Nelson filed her SSI application on February 25, 2011, claiming disability beginning on February 3, 2011. (Tr. 8). Her application was denied initially on June 10, 2011, and on reconsideration on October 5, 2011. (Tr. 8). Nelson then requested and was granted a hearing before an ALJ, which took place on November 20, 2012. (Tr. 8, 23-66). Nelson, who was represented by counsel, appeared and testified at the hearing. (Tr. 30-49). James Sarno, a Vocational Expert ("VE") also testified. (Tr. 49-65). He described the plaintiff's past work experience, and responded to hypothetical questions, which were posited by the ALJ and were designed to determine whether jobs exist in the national and regional economies for an individual of Nelson's age with a similar educational background, work experience and residual functional capacity ("RFC"). (Tr. 50-65). The ALJ issued a decision denying the plaintiff's application for benefits on November 29, 2012. (Tr. 8-16). The Appeals Council denied her request for review of this decision, thereby making the ALJ's decision the final decision of the Commissioner for purposes of review. (Tr. 1-3). Therefore, the plaintiff has exhausted her administrative remedies and this case is ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## The ALJ's Decision

The ALJ concluded that from February 25, 2011, the date of her application, through the date of his decision, Nelson had "not been under a disability, as defined in the Social Security Act," which defines "disability" as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." (Tr. 8, 15; Finding #6). There is no dispute that the ALJ, in reaching his decision, applied the five-step sequential evaluation required by 20 C.F.R. § 416.920. The procedure resulted in the following analysis, which is detailed in the ALJ's "Findings of Fact and Conclusions of Law." (See Tr. 10-15).

The first inquiry in the five-step process is whether the claimant is "engaged in substantial gainful work activity[.]" Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001). If so, the claimant is automatically considered not disabled and the application for benefits is denied. See id. In the instant case, the ALJ determined that Nelson had not engaged in such activity since February 25, 2011, the application date. (Tr. 10; Finding #1). Therefore, the ALJ proceeded to the next step in the sequential analysis.

The second inquiry is whether the claimant has a "severe impairment," meaning an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is considered not disabled and the application for benefits is denied. See Seavey, 276 F.3d at 5. Here, the ALJ concluded that Nelson suffered from a variety of severe impairments, including osteoarthritis, lower back pain, and diabetes. (Tr. 10; Finding #2). Because the ALJ determined that Nelson suffered from a number of severe impairments, he proceeded to step three in the sequential analysis.

The third inquiry is whether the claimant has an impairment equivalent to a specific list of impairments contained in Appendix 1 of the Social Security regulations, in which case the claimant would automatically be found disabled. See Seavey, 276 F.3d at 5; 20 C.F.R. § 416.920(a)(4)(iii). At this step, the ALJ concluded that Nelson's impairments, either alone or in combination, did not meet or medically equal any of the listed impairments. (Tr. 10; Finding #3). The plaintiff does not challenge this finding.

## The Step Four Analysis

Because the ALJ determined that Nelson's impairments did not meet or equal any of the listed impairments, his analysis continued. It is Nelson's contention that the ALJ erred at steps four and five. The fourth inquiry asks whether "the applicant's 'residual functional capacity' is such that he or she can still perform past relevant work[.]" Seavey, 276 F.3d at 5. If the claimant has the RFC to perform her past relevant work, the claimant is not disabled. Id.

In the instant case, the ALJ determined as follows with respect to Nelson's RFC:

> After careful consideration of the entire record, I find that the claim-
> ant has the residual functional capacity to perform less than the full
> range of light work as defined in 20 CFR 416.967(b).[3] She is able to

---

[3] 20 C.F.R. § 416.967(b) defines "light work" as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

> lift 20 pounds occasionally and 10 pounds frequently; stand or walk
> at least 6 hours in an 8-hour day; and sit (with normal breaks) about
> 6 hours in an 8-hour workday. She is able to frequently handle,
> finger, and feel. She has the ability to occasionally climb, balance,
> stoop, kneel, crouch, or crawl.

(Tr. 11, Finding #4). In making this finding, as detailed more fully below, the ALJ

"considered all symptoms and the extent to which these symptoms can reasonably be

accepted as consistent with the objective medical evidence and other evidence," as well

as the opinion evidence in the record. (Tr. 11).

The ALJ described Nelson's symptoms, based on her testimony and the evidence

in the record, to be as follows:

> The claimant alleged that her ability to work is limited by arthritis,
> diabetes, and high blood pressure. She reported no problems with
> personal care activities. She further indicated that she is limited to
> lifting 20 pounds. She reported that she can only walk for 10
> minutes before requiring rest. Her mobility has reportedly slowed.
> She indicated that she has difficulty getting in and out of the tub.
> She described problems with simple manual tasks. At the hearing,
> she testified that she continues to experience significant functional
> limitations caused by her alleged impairments. She stated that she
> needs help opening cans and takes an hour to bathe and get dressed.
> She indicated that she can lift a gallon of milk with two hands. She
> testified that diabetes causes tingling in her hands and feet. She
> stated that her arthritis affects her hip, back, fingers, and feet.

(Tr. 11 (record citations omitted)). The ALJ concluded that "the claimant's medically

determinable impairments could reasonably be expected to cause the alleged symptoms;

however, the claimant's statements concerning the intensity, persistence and limiting

effects of these symptoms are not credible to the extent they are inconsistent with the

above residual functional capacity assessment." (Tr. 11-12).

-8-

In reaching this conclusion, the ALJ reviewed Nelson's objective medical evidence in detail, and found that while "[t]he objective evidence provides some support to the claimant's allegations[,] . . . it does not support the elevated level of impairment alleged." (Tr. 12). He also reviewed, in detail, the opinions of both treating and non-treating physicians, as well as the fact that Nelson had been approved for state disability benefits (EADC). (Tr. 12-14). Nelson contends that the ALJ gave improper weight to the opinions of the non-examining state medical consultants, Drs. M.A. Gopal, M.D. and Stephanie Green, M.D., while improperly discounting the opinions of Nelson's treating physician, Dr. Daniel Alford, M.D., and a consulting physician for the State of Massachusetts, Dr. Asha Saxena, M.D., who examined Nelson. As detailed below, however, the ALJ fully explained the reasons for his credibility determinations, and cited inconsistencies between the objective medical evidence of record and the functional assessments of Drs. Alford and Saxena to support his determination.

In connection with determining whether a claimant has the RFC to perform the requirements of her past relevant work, "past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established." (Tr. 10 (citing 20 C.F.R. § 416.920(f))). "In addition, the work must have lasted long enough for the claimant to learn to do the job," and the work must have been performed at substantial gainful activity levels. (Tr. 10 (citing 20 C.F.R. §§ 416.960(b) and 416.965)). The ALJ concluded that Nelson's past work as a mail sorter, food service

worker and usher all met the criteria for past relevant work.  (Tr. 14; Finding #5).  Based

on the testimony of the VE, the ALJ concluded further that Nelson had the RFC to meet

the physical and mental demands of this work, and, thus, was "capable of performing her

past relevant work as a mail sorter, food service worker, and usher."  (Tr. 14).  Therefore,

the ALJ determined, Nelson was not disabled.  (Tr. 15).

## The Step Five Analysis

The ALJ found further that "[a]lthough the claimant is capable of performing past

relevant work, there are other jobs existing in the national economy that she is also able

to perform."  (Tr. 14).  Therefore, the ALJ made "alternative findings for step five of the

sequential evaluation process."  (Id.).  The fifth inquiry is whether, given the claimant's

RFC, education, work experience and age, the claimant is capable of performing other

work.  See Seavey, 276 F.3d at 5; 20 C.F.R. § 416.920(a)(4)(v).  If so, the claimant is not

disabled.  20 C.F.R. § 416.920(g).  At step five, the Commissioner has the burden "of

coming forward with evidence of specific jobs in the national economy that the applicant

can still perform."  Seavey, 276 F.3d at 5.

The ALJ posited hypothetical questions to the VE to determine "whether jobs exist

in the national economy for an individual with the claimant's age, education, work

experience, and residual functional capacity."  (Tr. 15).  The VE determined that such an

"individual would be able to perform the requirements of representative occupations such

as merchandise marker . . . and parking lot cashier[,]" and that this work existed in

significant numbers in the national economy.  (Id.).  Accordingly, the ALJ found that

-10-

Nelson was not disabled.  (Tr. 15; Findings ##5, 6).  Nelson alleges that the VE's testimony was irreparably compromised by the ALJ's improper RFC finding, since that RFC formed the basis of the hypothetical questions asked to the VE at the hearing.  (Tr. 52-55).

Additional facts relevant to this court's analysis are described below where appropriate.

## III.  ANALYSIS

### A.  Standard of Review

Nelson is seeking judicial review of the Commissioner's "final decision" pursuant to the Social Security Act § 205(g), 42 U.S.C. § 405(g) (the "Act").  The Act provides in relevant part that:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action .... The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a re-hearing.  The findings of the Commissioner of Social Security as to any fact, if supported by *substantial evidence*, shall be conclusive ....

42 U.S.C. § 405(g) (emphasis added).  The Supreme Court has defined "substantial evidence" to mean "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126

(1938)); accord Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st

Cir. 1991).  As the First Circuit has explained:

> In reviewing the record for substantial evidence, we are to keep in
> mind that "issues of credibility and the drawing of permissible
> inference from evidentiary facts are the prime responsibility of the
> [Commissioner]."  The [Commissioner] may (and, under his
> regulations, must) take medical evidence.  But the resolution of
> conflicts in the evidence and the determination of the ultimate
> question of disability is for him, not for the doctors or for the courts.
> We must uphold the [Commissioner's] findings in this case if a
> reasonable mind, reviewing the record as a whole, could accept it as
> adequate to support his conclusion.

Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981) (quoting

Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).  Thus,

"the court's function is a narrow one limited to determining whether there is substantial

evidence to support the [Commissioner's] findings and whether the decision conformed

to statutory requirements."  Geoffroy v. Sec'y of Health & Human Servs., 663 F.2d 315,

319 (1st Cir. 1981).  The Commissioner's decision must be affirmed, "even if the record

arguably could justify a different conclusion, so long as it is supported by substantial

evidence."  Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir.

1987).

        "Even in the presence of substantial evidence, however, the Court may review

conclusions of law, and invalidate findings of fact that are 'derived by ignoring evidence,

misapplying the law, or judging matters entrusted to experts[.]'"  Musto v. Halter, 135 F.

Supp. 2d 220, 225 (D. Mass. 2001) (quoting Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir.

1999) (per curiam)) (internal citations omitted). "Thus, if the ALJ made a legal or factual error, the court may reverse or remand such decision to consider new, material evidence or to apply the correct legal standard." Ross v. Astrue, Civil Action No. 09-11392-DJC, 2011 WL 2110217, at *2 (D. Mass. May 26, 2011) (internal citation omitted). Applying these principles to the instant case compels the conclusion that the Commissioner's decision must be affirmed.

### B.      Opinions of the Treating Physicians

The plaintiff argues that the ALJ's findings regarding her RFC were not supported by substantial evidence in large part because the ALJ did not properly weigh the opinions of her treating or examining physicians, and because he allegedly failed to provide an adequate explanation for granting them little evidentiary weight. It is undisputed that in assessing Nelson's RFC, the ALJ substantially adopted the findings of the state agency medical consultants. (Compare Tr. 11 with Tr. 77-79, 87-88).[4] The ALJ gave little weight to the functional assessment of the claimant completed by Nelson's treating physician, Dr. Alford, in December 2011, in which Dr. Alford found that the complainant was "severely limited by her impairments and incapable of sustaining even sedentary activities

_____

[4] Specifically, on May 31, 2011, M.A. Gopal, M.D. filled out a physical RFC assessment and opined that Nelson could occasionally lift 20 pounds and frequently lift 10 pounds, and stand and/or walk for about 6 hours and sit for a total of 6 hours in an 8 hour workday, limitations he attributed to lumbar disc disease and left foot pain. (Tr. 77-79). In addition, he opined that Nelson could occasionally climb ramps, stairs, ladders, ropes, and scaffolds, balance, stoop kneel, crouch and crawl, with the limitations again being due to lumbar disc disease and left foot pain. (Tr. 78). The same limitations were found by Dr. Stephanie Green, MD. in a physical RFC assessment dated September 29, 2011. (Tr. 87-88).

for a full 8-hour day." (Tr. 12). Similarly, the ALJ gave little weight to the evaluation of Dr. Saxena, which was based on a one-time examination in connection with the plaintiff's application for state benefits. (Tr. 13). He also found unconvincing the fact that Nelson had been approved for state disability benefits as of May 2012. (Tr. 13). The ALJ did grant some evidentiary weight to Dr. Alford's report of March 2012 insofar as it suggested mild to moderate functional limitations, but found that it did not support a finding of disability. (Tr. 13). For the reasons detailed herein, this court finds that the ALJ's assessments are supported by the record.

## **Standard of Review**

There is no requirement that the ALJ give greater weight to the opinions of treating physicians. Arruda v. Barnhart, 314 F. Supp. 2d 52, 72 (D. Mass. 2004), and cases cited. A treating physician's opinion as to the nature and severity of an impairment is given "controlling weight" only "where it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence' in the claimant's case." Id. (quoting 20 C.F.R. § 416.927(c)(2)). If it is not given controlling weight, the treating physician's opinion, like other medical opinions, should be assessed considering, without limitation, (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the amount of support given for the opinion; (4) the consistency of the medical opinion with the record as a whole; and (5) whether the physician is a specialist in the relevant area of medicine. See 20 C.F.R. § 416.927(c)(2)(i), (c)(2)(ii), (c)(3)-(6).

The ALJ should give "good reasons" in his decision for the weight given to the treating source's opinion.  See 20 C.F.R. § 416.927(c)(2).  Nevertheless, the ALJ does not need to explicitly address each factor the regulations suggest be considered, so long as the explanation is "sufficiently clear."  See Green v. Astrue, 588 F. Supp. 2d 147, 155 (D. Mass. 2008).

### Dr. Alford - December 2011

As noted above, the ALJ found that "Dr. Alford's treating source opinion is largely unsupported by the objective medical findings" as a result of which he granted it "little evidentiary weight."  (Tr. 12).  Dr. Alford was Nelson's primary care physician, and he saw her every two to three months.  (Tr. 373-75).  He completed a Residual Functional Capacity Questionnaire dated December 16, 2011.  (Tr. 373-75).  Dr. Alford diagnosed diabetes mellitus, hypertension, chronic right hip pain and alcohol dependence.  (Tr. 373).  He opined that Nelson's symptoms and limitations began in 2005.  (Tr. 375). According to Dr. Alford, plaintiff's symptoms would "often" interfere with attention and concentration, and she had a "marked limitation" in dealing with work stress.  (Tr. 373). While Dr. Alford reported that Nelson could only walk 1 block without resting, he nevertheless opined that she could sit for more than 2 hours continuously, and stand for 30 minutes at a time.  (Tr. 373-74).  However, he also opined (inconsistently) that Nelson could only stand for less than 2 hours total in an 8 hour working day, with normal breaks, and sit for a total of about 2 hours in an 8 hour working day.  (Tr. 374).  Dr. Alford opined that Nelson would need unscheduled breaks about every 2 hours, and would need

to rest for 15 minutes before returning to work.  (Tr. 374).  He further concluded that Nelson needed a cane to walk.  (Tr. 374).

According to Dr. Alford, Nelson could "occasionally" lift up to 10 or 20 pounds, and could never lift 50 pounds.  (Tr. 375).  She had "significant limitations in doing repetitive reaching, handling or fingering" and could only bend and twist at the waist 25% of the day.  (Tr. 375).  Finally, according to Dr. Alford, Nelson would have "good days" and "bad" and was likely to be absent from work more than three times a month. (Tr. 375).  Dr. Alford provided no explanation or support for any of his ultimate conclusions.

### Dr. Alford - March 2012

Dr. Alford also submitted a report dated March 18, 2012 to the Massachusetts Department of Transitional Assistance ("DTA") for purposes of determining Nelson's eligibility for Emergency Aid to the Elderly, Disabled, and Children ("EAEDC") (Tr. 471-79).  Therein, Dr. Alford opined that Nelson's right hip pain, hypertension and diabetes mellitus affected her ability to work and would be expected to last for more than a year.  (Tr. 473-74, 479).  He found that there was a decreased range of motion of her right hip on a musculoskeletal examination.  (Tr. 475).  However, her neurological system, including reflexes, motor strength, sensation, ambulation and mental status were within normal limits.  (Tr. 475).  Similarly, all of her daily activities, including personal dress and hygiene, ordinary housework, food shopping, driving, managing medications, using a computer, placing an emergency phone call, and visiting friends and family, were

all within normal limits.  (Tr. 478).  The ALJ granted this report "some evidentiary weight insofar as it suggests mild to moderate functional limitations."  (Tr. 13).

### Dr. Asha Saxena - May 2012

Dr. Saxena examined the plaintiff on May 15, 2012 at the request of DTA, to help determine her eligibility for EAEDC based on right hip pain, diabetes, hypertension, anemia, lower back pain, strain and arthritis.  (Tr. 457-59, 480).  Nelson reported that her lower back and right hip pain had started about three or four years earlier, and that she had been diagnosed with arthritis.  (Tr. 457).  According to Dr. Saxena, the objective examination of the LS spine and right hip "showed slightly restricted range of movement with mild pain and SLR was negative bilaterally, able to bear partial weight with some discomfort on the right hip and according to her the intensity of the pain varies for 0-4/10 and the back pain radiates into the right hip area."  (Tr. 459).  The doctor noted that Nelson walked with the help of a cane, slowly and with pain, and that she took pain medication for back pain with "good results."  (Id.).

During Dr. Saxena's examination, Nelson denied any complications from her diabetes, and denied diabetic neuropathy.  (Id.).  She further reported that "her blood sugar has been under adequate control," as had her hypertension.  (Id.).  Any symptoms of anemia had resolved and she no longer had anemia.  (Id.).  According to Nelson, she cannot sit, stand or walk for more than 10-15 minutes.  (Id.).  Nelson also reported that she could walk for about ½ block with the help of a cane, she was unable to climb the stairs, and could not carry more than 5-10 pounds of weight and has some difficulty

performing her activities of daily living.  (Id.).  All of these limitations reflect Nelson's self-reporting, and there does not appear to have been any independent assessment of these limitations by the doctor.  (Tr. 457-59).  The ALJ gave Dr. Saxena's findings "little evidentiary weight" as they were based "on a one-time examination and largely unsupported by the weight of objective medical evidence[.]"  (Tr. 13).

### ALJ Assessment of Dr. Alford's Opinions

In giving Dr. Alford's 2011 assessment little weight, the ALJ found that the doctor's "sweeping findings are almost entirely unsupported by the relatively benign objective findings" contained in the record.  (Tr. 12).  The objective evidence on which the ALJ relied included the following:

> In February 2010, the claimant sought treatment for right lower extremity weakness.  She also complained of right knee pain.  Diagnostic imaging of her lumbar spine revealed mild degenerative changes most notably at L5-S1 with subsequent foraminal and subarticular recess narrowing.  Physical examination revealed negative straight leg raising and full range of motion in the right with minimal crepitis and no joint effusion.  Neurological findings were normal.  She retains full motor strength (4/5-5/5) in her lower extremities.  In April 2010, she was reportedly not checking her glucose levels and had missed two appointments at the diabetes clinic.  At that time, she did not have any musculoskeletal complaints.  Her station and gait were normal.  In July 2010, she reported that she had lost her medications and had not followed up with the diabetes clinic.  At that time, she reported that she was not experiencing pain.  In March 2011, physical examination of her back, upper extremities, and lower extremities were normal.  In December 2011, she denied any back pain.

(Tr. 12) (record citations omitted).  None of these objective findings were addressed by Dr. Alford.

In evaluating Dr. Alford's opinion, the ALJ considered, among other things, the cursory nature and lack of support given for Dr. Alford's opinion, and the fact that the doctor's findings were inconsistent with the medical record as a whole. See 20 C.F.R. § 416.927(c)(2). In light of the fact that the record showed that Nelson's "[p]hysical examinations were largely normal[,]" "claimant exhibited none of the ambulatory limitations described by Dr. Alford[,]" and that "[a]lthough her diabetes was uncontrolled due largely to noncompliance, she exhibited few significant resulting functional limitations on physical examinations and diagnostic imaging revealed only mild lumber degeneration[,]" it is not reversible error for the ALJ to have given Dr. Alford's 2011 opinion little evidentiary weight. (Tr. 12).

In largely rejecting the opinions of Dr. Alford and Dr. Saxena rendered in 2012, the ALJ also conducted a detailed analysis of Nelson's 2012 medical treatment, as well as her own descriptions of her abilities. In particular, but without limitation, the ALJ noted that the medical records showed that in January 2012, Nelson was still not checking her glucose levels. (Tr. 12). Although the ALJ recognized that Nelson was walking with a cane, he noted that no medical source had prescribed a cane, her mobility was reportedly normal with the cane, physical examinations showed no loss of muscle strength in her legs which would warrant the use of a cane, and that Nelson had no diabetic foot symptoms such as tingling or numbness which would warrant the use of a cane. (Tr. 12,

13)[5]  Similarly, the ALJ considered the fact that a January 2012 examination of Nelson's back revealed "a full range of motion and 5/5 strength in active and passive forward flexion and extension."  (Tr. 12).  In addition, diagnostic testing revealed only mild degenerative changes and the records documented Nelson's frequent denials of back pain.  (Tr. 13).  Again, while the ALJ acknowledged that Nelson was complaining of right hip pain with rotation, the diagnostic imaging of her right hip had revealed no osteoarthritis.  (Tr. 12).  In sum, the ALJ concluded that while "[t]he recent treatment record indicates persistent subjective complaints of fatigue and myalgias" there were "few significant objective findings on physical examination."  (Tr. 12).  There is ample record support for these findings.

The ALJ also took note that "the claimant testified that she dresses and bathes herself, prepares her own meals, watches television during the day, and takes the bus."  (Tr. 13).  Nelson reported no problems with personal care activities and indicated that she

---

[5]  Nelson objects to this finding and argues that "there are repeated references to numbness and tingling in Ms. Nelson's toes."  (Pl. Response (Docket No. 33) at 2-3).  However the citations show that in October, 2011, Nelson complained of numbness and tingling in her toes and fingers, and Dr. Alford concluded that this was "likely due to hyperglycemia will reevaluate when insulin restarted."  (Tr. 444).  From November 2011 through August 2012, any numbness and tingling had "improved."  (Tr. 532, 398, 411, 423).  This is true even though Nelson was often non-compliant with her diabetes treatment.  (See, e.g., Tr. 534).  On March 27, 2012 Nelson denied numbness and tingling during her examination by a Sports Medicine specialist referred by Dr. Alford.  (Tr. 550).  Dr. Alford found her "sensations" to be within normal limits in March 2012 (Tr. 475), and Dr. Saxena  reported in May 2012 that Nelson denied diabetic neuropathy.  (Tr. 459).  Nelson's diabetes office visit on August 22, 2012 showed continued non-compliance with her diabetes treatment, but she nevertheless was found to have normal muscular tone, sensation and motor ability.  (Tr. 534, 536).  The ALJ's assessment is substantially supported by the record.

could lift 20 pounds.  (Tr. 11).  Even Dr. Alford had concluded in 2012 that Nelson's

daily activities were all within normal range, and he did not specify to what degree any of

her limitations affected her ability to work.  (Tr. 13).  As the ALJ found, "[t]hese

generally normal daily activities do not support the elevated level of impairment alleged."

(Tr. 13).  Where, as here "the ALJ undertook a thorough analysis of the evidence and

testimony before him," and since "it is left to the administrative law judge to resolve

conflicts in evidence[,]" the ALJ's decision must be affirmed as it is supported by the

record.  Mason v. Astrue, No. 12-30054-KPN, 2013 WL 2247583, at *4 (D. Mass. Feb.

1, 2013).

### ALJ Assessment of Dr. Saxena's Opinion

The ALJ conducted an extensive analysis of the record before rejecting Dr.

Saxena's opinion as well.  Thus, the ALJ acknowledged that Dr. Saxena had concluded

that Nelson "can only walk for about a half block with the help of a cane but limping and

slowly" and that Nelson "was unable to climb the stairs, cannot carry more than 5-10

pounds of weight, and also experiences some difficulty performing her activities of daily

living."  (Tr. 13).  Nevertheless, as the ALJ explained, Dr. Saxena's "substantial restric-

tions appear to be almost entirely based on the claimant's subjective reports of functional

limitations since Dr. Saxena's physical examination revealed generally mild abnormali-

ties."  (Tr. 13).  As the ALJ explained further:

> [e]xamination of the lumbar spine and right hip showed only slightly
> restricted range of movement with mild pain and negative straight
> leg raising.  The claimant ambulated slowly with a cane but note[]

the several treatment notes cited above that show normal gait and
station with and without the cane. The claimant denied any diabetic
or hypertension-related complications. Accordingly, there was very
little objective support for the claimant's allegations of significant
physical limitation. They are also inconsistent with the treatment
record and Dr. Alford's report that she had no limitation in daily
activities. Dr. Saxena's findings are based on a one-time
examination and largely unsupported by the weight of objective
medical evidence discussed above.

(Tr. 13) (record citations omitted). Thus, the ALJ properly considered the limited

relationship between Dr. Saxena and Nelson, the lack of apparent support for the doctor's

findings, and the fact that the doctor's conclusions were not consistent with the record as

a whole. See 20 C.F.R. § 404.1527(c)(2). There was no error warranting a remand. See

Lizotte, 654 F.2d at 128 (quoting Rodriguez, 647 F.2d at 222) (court must uphold the

Commissioner's findings "if a reasonable mind, reviewing the record as a whole, could

accept it as adequate to support his conclusion.").

## EAEDC Eligibility

Nelson contends that the ALJ erred in not properly considering (and adopting) the

conclusion of the Commonwealth of Massachusetts that she was disabled and entitled to

benefits. Specifically, the State used reports from Dr. Alford and Dr. Saxena in deter-

mining plaintiff's EAEDC eligibility, as well as information from Dr. Manning, who

worked for DTA. Strikingly, Dr. Manning had determined that Nelson was capable of the

full range of sedentary work. (Tr. 486). Dr. Manning further determined that she could

frequently lift and/or carry 10 pounds, stand and/or walk at least 2 hours in an 8 hour

workday, and sit for 8 hours with normal breaks. (Tr. 488). His RFC assessment

included a finding that she could "frequently" balance and climb ramps or stairs, occasionally stoop, crouch, kneel and crawl, but never climb ladders or scaffolding. (Tr. 488). Nevertheless, the DTA decided on May 25, 2012 that Nelson had a disability that was expected to last through May 24, 2013. (Tr. 482).

The ALJ gave the state agency's conclusion that Nelson was disabled "little weight as it is largely based on [Dr. Saxena's] unsupported report and 20 CFR 416.904 specifically provides that a decision by any other governmental agency about whether an individual is disabled is based on its rules and not binding upon the Social Security Administration." (Tr. 13-14). This was entirely appropriate. It is well established that the standard employed for benefits under EAEDC "is less strict than that required for Social Security benefits because an applicant is not required to show that she is totally disabled." Tolentino v. Astrue, No. 09-11093-RGS, 2010 WL 1633484, at *4 n.7 (D. Mass. Apr. 21, 2010).[6] Moreover, as the ALJ noted, the Social Security regulations expressly provide that other governmental determinations about a claimant's disability are not binding upon the Commissioner. See 20 C.F.R. § 416.904.

---

[6] Although Nelson argues that the EAEDC program applied the same standard as the ALJ, there is no citation to any evidence in the record to support that conclusion. (See Pl. Mem. (Docket No. 19) at 8). To the extent the claimant argues that the ALJ failed to adequately address the reasons why he rejected the EAEDC decision, that assertion is belied by the record since the ALJ did explain that the EAEDC conclusion was not supported by the underlying medical reports. The ALJ did not simply ignore the state disability finding. Compare Taylor v. Astrue, No. SSR 06-03-p, 2011 WL 2669290, at *5 (E.D.N.C. July 7, 2011) (while evidence of a state agency is not binding on the ALJ, the state's "determination is evidence the ALJ must consider in making his own decision as to the claimant's disability.").

In sum, the record establishes that the ALJ carefully considered the record as a whole, gave careful consideration to the opinions of the treating and examining physicians, and fully explained the basis for his decision to give them little or no weight. There was no error.

### C.    Opinions of the State Medical Examiners

The plaintiff contends that the ALJ improperly relied on the opinions of the DDS reviewers, including the opinion of Dr. Gopal in May 2011, and the opinion of Dr. Green in September 2011, in determining Nelson's RFC. Thus, the ALJ determined that, while these were opinions from non-examining and non-treating expert sources, they were "not inconsistent with the medical evidence as a whole," as a result of which he gave them "evidentiary weight in determining the claimant's residual functional capacity[.]" (Tr. 14). Despite the fact that the ALJ expressly noted that he had "considered all of the medical evidence of record and treatment notes received during the development of the record" (Tr. 14), Nelson objects to the fact that the state medical examiners did not have all of the medical records when they rendered their opinions. Such records, as well as the later authored opinions of Dr. Alford and Dr. Saxena, according to the plaintiff, establish that "Ms. Nelson became much less functional and much less mobile in the period after the reviews of the record by the DDS file reviewers. As a result, it was error for the ALJ to attempt to rely upon those early file reviews which no longer accurately reflected her condition." (Pl. Resp. (Docket No. 33) at 10). For the reasons detailed below, this court

finds these arguments unpersuasive, and based on an unsupportable reading of the record as a whole.

In particular, Nelson contends that the examiners did not have "records showing severe right hip pain which was not resolved with physical therapy, a diagnosis of osteo-arthritis, development of pain in both the right ankle, which she had previously broken, and the right knee, with findings of crepitis, in addition to anemia, fatigue and a significant weight loss [down to 129 pounds] (bordering on 20 percent of her entire body weight)."  (Pl. Resp. (Docket No. 33) at 9-10).  As detailed more fully below, however, most of these ailments were not newly developed after the DDS reviewers' reports. Moreover, the record is clear that the ALJ considered the full record in making his determination.

It is undisputed that the ALJ may rely on reports from non-treating physicians when they are more consistent with the record than reports provided by treating physicians.  See Berrios-Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991); DiVirgilio v. Apfel, 21 F. Supp. 2d 76, 80-81 (D. Mass. 1998). Nevertheless, it is well established that medical evidence that is too far removed from the relevant time period cannot constitute substantial evidence if more recent records establish a significant worsening of the claimant's condition.  See Abubakar v. Astrue, No. 11-cv-10456-DJC, 2012 WL 957623, at *12 (D. Mass. Mar. 21, 2012), and cases cited.  On the other hand, the ALJ may rely on the older evidence where it remains

consistent with the current condition.  Id.; Ferland v. Astrue, No. 11-cv-123-SM, 2011 WL 5199989, at *4 (D.N.H. Oct. 31, 2011).

The overall record simply does not support the plaintiff's characterization of her condition having significantly worsened between 2011 and 2012.  In fact, Dr. Alford expressly found in 2012 that Nelson's conditions had existed since 2005, and he did not note any recent significant changes.  (Tr. 375).  Dr. Saxena also did not note any recent worsening of Nelson's condition.  Of the ailments that the plaintiff contends are "new," Dr. Saxena reported in 2012 that Nelson's lower back and right hip pain had existed for three or four years, and that she had been diagnosed with arthritis in the past as well.  (Tr. 459).  She further noted that Nelson had been treated for anemia in the past, and that any condition had resolved.  (Id.).  Nelson's weight was reported at 129 pounds, but it was not described by Dr. Saxena as being the result of a recent, significant decline.  (Tr. 458).[7]  Both Dr. Gopal and Dr. Green had addressed Nelson's anemia (Tr. 78, 88), arthritis (Tr. 74, 82), and foot and joint pain, as well as her use of a cane, so those conditions were clearly not new.  (Tr. 78-79, 85).  Admittedly, there is no prior mention of ankle pain, but since that condition was not mentioned by Drs. Alford, Saxena or Manning, that condition could not have been a significant factor in their assessment of Nelson's limitations.

---

[7] Nelson implies that the weight loss may be attributed to anemia, but Dr. Saxena expressly found that Nelson was not suffering from anemia or any effects thereof.  (Tr. 459; Pl. Resp. (Docket No. 33) at 9 n.9).

In short, the record does not reflect the dramatic worsening of conditions that Nelson is attempting to portray. Rather, by 2012, as Dr. Alford reported, Nelson had "apparently normal daily functioning" with impairments that were "no more than mild to moderate in severity." (Tr. 13, citing portions of Dr. Alford's report). It was appropriate for the ALJ to rely on the DDS examiners' reports that were consistent with those findings.

Nelson's objections to the ALJ's reference to the reports of Drs. Gopal and Green must fail for the additional reason that the record shows, as detailed above, that the ALJ reviewed all the 2012 clinical findings and opinion evidence before rendering his RFC assessment. He discussed Nelson's complaints, her own testimony about her ability to perform activities of daily life, and all the opinion evidence in the record. His review of medical records was complete. He did not rely exclusively on the examiners' reports and there is no need for a remand for the state examiners to review the same records.

In an attempt to negate the ALJ's conclusion, the plaintiff argues that in reviewing the medical records the ALJ improperly "relied on his lay interpretation of the medical evidence, substituting his lay judgment for that of the medical experts." (See Pl. Mem. (Docket No. 19) at 7). That argument, however, is not supported by the record. There is no evidence that the ALJ assumed the role of medical examiner and interpreted lab work, blood tests, results of physical examinations or the like. Rather, the ALJ reviewed all the opinions of the medical experts and determined that apart from their cursory final assessment of total disability, even Drs. Alford and Saxena had found impairments that

were only mild to moderate in severity. There was no improper interpretation of medical data by the ALJ.

The plaintiff also argues that somehow the ALJ placed too much weight on the plaintiff's daily living activities in formulating the RFC. (Pl. Resp. (Docket No. 33) at 13). In particular, the plaintiff argues that the ALJ failed to explain how the ability to perform the tasks of daily living "demonstrated the invalidity of any of the limitations stated by Dr. Alford." (Id.). There is no evidence, however, that the ALJ gave this information too much weight. Rather, the ALJ focused on the fact that Nelson's ability to perform daily activities does "not support the elevated level of impairment alleged." (Tr. 13). A review of the medical exams, opinions and testimony of the plaintiff demonstrated "no more than mild to moderate limitations related to back and hip pain, osteoarthritis, and diabetes" and that the plaintiff "retains the ability to meet the general demands of most light work." (Tr. 13). It was entirely appropriate for the ALJ to consider evidence of the claimant's ability to participate in daily living activities in connection with assessing the reports relating to her ability to perform work related tasks. See Abubakar, 2012 WL 957623 at *12; Berrios-Lopez, 951 F.2d at 429. Again, there was no error.

Finally, the plaintiff takes exception to the ALJ's failure to find that the plaintiff needed to consistently use a cane. (Pl. Resp. (Docket No. 33) at 15). As an initial matter, the plaintiff's own testimony at the hearing indicated that she had decided to use a cane when she went outside, and that it had not been prescribed by a doctor. (Tr. 42). Thus, it is far from clear that the plaintiff would in fact need a cane at work and the ALJ was free

to find otherwise.  See Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) ("It is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence.").  Moreover, even though Dr. Alford knew that Nelson used a cane (Tr. 374), he still found that she was able to do ordinary housework, food shopping, driving and visit family and/or friends.  (Tr. 478). Thus, the use of the cane did not render her incapable of all activities, as she now contends, nor did it require alteration of the ALJ's RFC.  Finally, if there was any error, it was rectified when the VE was asked to consider what the effect on his opinion would be if the hypothetical included the need to use a cane at all times for standing and ambu- lating, and the VE testified that the individual would still be able to work as a mail clerk and usher, although working as a cafeteria server would be difficult as it would require the use of two hands.  (Tr. 59-60).[8]  Thus, there was no error in the ALJ's RFC due to a failure to include a requirement that the claimant use a cane.

For all these reasons, the ALJ did not improperly rely on the opinions of the non- examining doctors.

### D.    There Was No Error At Step 5

As detailed above, at step 5 the burden shifts to the Commissioner, who must come "forward with evidence of specific jobs in the national economy that the [claimant]

---

[8]  The claimant contends that the VE answered the new hypothetical by stating that she could not perform any of her prior jobs.  While the testimony is not clear, that is not how this court reads it.  (See Tr. 58-60).  Nor would it make sense for the use of the cane to preclude the plaintiff from jobs that required sitting, or that did not need two hands.

can still perform" in order to sustain a finding of no disability.  <u>Seavey</u>, 276 F.3d at 5.  In

meeting this burden, the Commissioner may require testimony from a vocational expert to

determine what employment a claimant may be able to seek.  <u>See</u>, <u>e.g.</u>, <u>Garay v. Sec'y of

Health & Human Servs.</u>, 46 F.3d 1114, No. 94-1515, 1995 WL 54077, at *4 (1st Cir.

Feb. 10, 1995) (unpub. op.).  In the instant case, the plaintiff takes exception with the

hypothetical posited to the VE which incorporated the RFC that the ALJ had assessed.

Nelson contends that "the vocational witness's testimony was irreparably tainted by the

ALJ's flawed RFC hypothetical question, which failed to accurately account for the

limiting effects of Plaintiff's impairments."  (Pl. Resp. (Docket No. 33) at 17-18).  Since,

for the reasons detailed above, the RFC was amply supported by the evidence, this

challenge to step 5 must also fail.

## IV.  <u>CONCLUSION</u>

For all the reasons detailed herein, the Plaintiff's Motion to Reverse (Docket No.

19) is DENIED and the Defendant's Motion to Affirm (Docket No. 29) is ALLOWED.


    <u>/ s / Judith Gail Dein        </u>
Judith Gail Dein
U.S. Magistrate Judge